# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

MICHELE WATKINS,         }

       }

     **Plaintiff,**      }

       }

v.              }     **CASE NO. CV 01-B-3148-NE**

       }

**CITY OF HUNTSVILLE,**   }

**ALABAMA,**          }

       }

   **Defendant.**      }

## <u>MEMORANDUM OPINION</u>

This case is currently before the court on defendant's Motion for Summary Judgment, (doc. 17),[1] and Motions to Strike filed by both parties, (doc. 20, 23). Plaintiff, Michele Watkins, contends defendant, the City of Huntsville, discriminated against her on the basis of her race because it did not select her for either of two full time Court Clerk I positions, (doc. 16 ¶ 22), in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), (doc. 16 ¶ 16), 42 U.S.C. § 1981, (doc. 16 ¶ 23), and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, (doc. 16 ¶ 28). Plaintiff further alleges that defendant terminated her in retaliation for filing an EEOC charge and for filing this lawsuit, in violation of Title VII and section 1981. (Doc. 16 ¶¶ 37, 47.) Upon consideration of the record, the submissions of the parties, argument of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 17), is due to be

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.



granted, defendant's Motion to Strike, (doc. 23), and plaintiff's Motion to Strike, (doc. 20), are due to be denied.

# I. **MOTIONS TO STRIKE**

## A. **DEFENDANT'S MOTION TO STRIKE.**

### 1. **Affidavit of Richard R. Henson**

Defendant moves to strike the affidavit of Richard R. Henson, (doc. 25), because it is not based on Henson's personal knowledge as required by Fed. R. Civ. P. 56(e).

Richard R. Henson, an attorney, represented plaintiff when she was charged with making harassing communications in 1985. Plaintiff offers Henson's affidavit to support her allegation that she received youthful offender status for her 1985 conviction. (*See* Pl. Br. in Opp. to Mot. for Summ. J. at 16.)  Henson testified he has no personal recollection of the outcome of plaintiff's criminal conviction; he stated, "I do not have a personal recollection of the outcome of the harassing communications case where I represented [plaintiff]." (Doc. 25 ¶ 14.)  He did, however, state that youthful offender status, under the circumstances, would have been "routine."  (*Id.* ¶¶ 15-17.)

The Eleventh Circuit has held:

> The Rules are clear: "Supporting and opposing affidavits *shall* be made on personal knowledge." Fed. R. Civ. P. 56(e) (emphasis added). Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, "upon information and belief" – instead of only knowledge – from raising genuine issues of fact sufficient to defeat summary judgment. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000)("upon information and belief" insufficient); *Fowler v. Southern Bell Tel. and Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965)("knowledge, information and belief" insufficient); *Robbins v. Gould*, 278 F.2d 116, 118 (5th Cir.

2

> 1960)("knowledge and belief" insufficient). Likewise, an affidavit stating only that the affiant "believes" a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact. *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949)("Belief, no matter how sincere, is not equivalent to knowledge."); *see also Tavery v. United States*, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994); *Hansen v. Prentice-Hall, Inc.*, 788 F.2d 892, 894 (2d Cir. 1986). Even if the affidavit is otherwise based upon personal knowledge (that is, includes a blanket statement within the first few paragraphs to the effect that the affiant has "personal knowledge of the facts set forth in th[e] affidavit"), a statement that the affiant believes something is not in accordance with the Rule. *See Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978)(equating "I understand" statement in affidavit to inadmissible "I believe" statements and concluding that statement is inadmissible despite general averment to personal knowledge at beginning of affidavit).

*Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002)(emphasis in original; footnote omitted).

Therefore, it appears that Henson's Affidavit, which is not based on Henson's personal knowledge but his supposition about what probably happened under the circumstances, does not comply with the requirement of Rule 56(e) and case law that affidavits must be based on personal knowledge. Nevertheless, the court finds it unnecessary to reach the merits of defendant's Motion to Strike Henson's Affidavit. The court has reviewed and considered Henson's Affidavit and finds that nothing contained in it would cause this court to deny defendant's Motion for Summary Judgment, which for the reasons set forth below is due to be granted. Therefore, defendant's Motion to Strike Henson's Affidavit will be denied as moot.

3

### 2.    Exhibit 45

Plaintiff's Exhibit 45, (doc. 21, Ex. 45), is a memorandum from Pam Fewell to her supervisor, Judge Charles Rodenhauser, dated October 15, 2001.  In the memo, Fewell discusses her questions and concerns related to an EEOC charge filed by Diane Shine, another court employee.  Plaintiff alleges the memo as a whole is evidence of Fewell's "disposition to retaliate."  (Pl's. Br. in Opp. to Mot. for Summ. J. at 15, 20.)[2]

Defendant points out that this memorandum is unrelated to plaintiff's claims of racial discrimination and retaliation.  Therefore, defendant asserts that this evidence is due to be stricken from the record as it is irrelevant.

The court finds it unnecessary to reach the merits of defendant's Motion to Strike plaintiff's Exhibit 45. The court has reviewed and considered Fewell's memo and finds that nothing contained in it would cause this court to deny defendant's Motion for Summary Judgment, which for the reasons set forth below is due to be granted. Therefore, defendant's Motion to Strike plaintiff's Exhibit 45 will be denied as moot.

### 3. Statistical Evidence

On page sixteen of her opposition brief, plaintiff cites Shockley's deposition testimony, in which Shockley states she is familiar with "statistics that are published by judicial information sources" reflecting that "African Americans tend to be arrested more frequently than whites." (Pl's. Br. in Opp. to Mot. for Summ. J. at 16 (citing Doc. 21, Ex. 12

---

[2]In this memo Ms. Fewell writes: "If she [referring to Ms. Shine] cannot be fired for her actions, then transfer her to another department."

4

at 116).)[3]   Defendant objected to this line of questioning during Shockley's deposition, (*see* doc. 21, Ex. 12 at 116), and has moved to strike the evidence on the ground that plaintiff did not "identify or provide these alleged statistics, or any information pertaining to the substance of the statistics, or the sources of the statistics." (Doc. 23 at 7.)

"[S]tatistics without an analytical foundation are 'virtually meaningless.'" *Dooley v. AutoNation USA Corp.*, 218 F. Supp. 2d 1270, 1279 (N.D. Ala. 2002) (quoting *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 963 (11th Cir. 1997)). However, plaintiff relies on this testimony to establish that Shockley was "familiar with [these] statistics," and not to establish that African-Americans are arrested more often that whites.

--------------------

[3]Shockley testified as follows:

Q.  Are you aware that African Americans tend to be arrested more frequently than whites do in terms of race?

MR. ANDERSON:  [Object to form.]

A.  I see both in Court.

Q.  Well, are you familiar with any of the statistics that are published by any of the judicial information sources?

MR. ANDERSON:  Same objection.

A.  Yes, sir.

Q.  And those generally reflect that proportionately for race, African Americans tend to be arrested more frequently than whites, correct?

MR. ANDERSON:  Same objection.  Asked and answered.

A.  Yes.

However, the court has reviewed and considered Shockley's deposition testimony and finds that it would not cause this court to deny defendant's Motion for Summary Judgment, which for the reasons set forth below is due to be granted. Therefore, defendant's Motion to Strike Shockley's deposition testimony regarding statistical evidence will be denied as moot.

**B.    Plaintiff's Motion to Strike Defendant's Exhibit 8**

Plaintiff seeks to strike Exhibit 8 of defendant's evidentiary submission because the original copy of the case is not in the possession of the defendant's Clerk's office. (Doc. 20 ¶ 1.) Exhibit 8 is an unsigned letter addressed to plaintiff, initialed by Fewell, and certified by Shockley. (Doc. 18, Ex. 8.) The letter, dated April 11, 2002, states, "We do not have the original copy of the case you requested on Harassing Communications. According to our records, you were arrested on October 30, 1985 and found guilty on November 6, 1985. You were fined $25.00 plus court cost." (*Id.*)

The court notes that plaintiff's evidentiary submission contains a document demonstrating that defendant received a report from the ABI that showed plaintiff was arrested on October 30, 1985, and a "date of disp" of November 12, 1985 of Harassing Communication. (Doc. 21, Ex. 15.) Also, her "RAP Sheet Report" from the Huntsville Police Department, shows the same arrest and conviction on November 6th for harassing communications. (Doc. 21, Ex. 18 at 222, 224.) This is the same information contained in the letter plaintiff seeks to strike. (*Compare* doc. 21, Exs. 15 and 18 *with* doc. 18, Ex. 8.)

The court has reviewed and considered defendant's Exhibit 8 and finds that it would not cause this court to deny defendant's Motion for Summary Judgment, which for the

6

reasons set forth below is due to be granted. Therefore, plaintiff's Motion to Strike defendant's Exhibit 8 will be denied as moot.

## II. <u>MOTION FOR SUMMARY JUDGMENT</u>

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

7

## B. STATEMENT OF FACTS

On July 6, 2000, plaintiff, a black female, applied for a part-time position as a Court Clerk I with defendant's Municipal Court. (Doc. 18, Ex. 2, doc. 21, Ex. 18.) Plaintiff interviewed with Lisa Shockley, Sherri Huffman, and Pam Fewell, supervisors over various areas of the court. (Doc. 18, Ex. 1 at 51; *id.*, Ex. 9 at 14; *id.*, Ex. 10 at 28.) Following her interview, she was offered a part-time Court Clerk I position, and began working for defendant on October 9, 2000. (Doc. 18, Ex. 1 at 32, 54; *id.*, Ex. 9 at 14; Doc. 21, Ex. 11 at 32.) Plaintiff worked defendant's "night court," pulling traffic tickets, generating and filing warrants, and dismissing tickets. (Doc. 18, Ex. 9 at 16, 21-22.)

According to Fewell, one of plaintiff's supervisors, plaintiff failed to perform the very simple, yet critical, tasks that her job required. (Doc. 18, Ex. 10 at 29-30.) Plaintiff repeatedly failed to "disposition cases" and tickets, forgot to take roll at the driving schools, and submitted incomplete tickets. (*Id.* at 29-33.) Fewell testified:

> You have problems in the beginning with any new employee but within the first month that she was there she should not have been having any procedure problems with that and she was still having problems with that. And into the second month is when I talked to her about the problems I was having. And also if she didn't mark a class roll or something I wouldn't go in and do it myself. I would leave it for her and tell her that this wasn't marked in the computer and you need to go back and correct it. So I was making her aware of the mistakes that she was making.

*Id.* at 32. Although Fewell made plaintiff aware of her mistakes, she saw no improvement. (*Id.* at 32-33.)

Fewell issued six memoranda to the part-time clerks during plaintiff's employment that addressed deficiencies in their performance. (*Id.* at 45-46, 51-52, 54-58; *id.*, Exs. 11-16.) Huffman, another supervisor, stated that plaintiff's mistakes were "occasional mistakes," "probably two or three times a month," but her mistakes were made in the courtroom and, therefore, were "big mistakes." (Doc. 18, Ex. 9 at 23, 59-62, 65.) According to Huffman, "Mistakes in the courtroom were big mistakes, they weren't just little mistakes. I mean, if you don't dismiss a ticket in the computer then the computer is going to automatically issue a warrant for your arrest which suspends your driver's license and that was being done." *Id.* at 61. Plaintiff continued to make errors until her termination. (*Id.* at 61, 75-76; *id.*, Ex. 10 at 39-40, 46.)

A month after plaintiff began working for defendant, a full-time Court Clerk I position opened, and Huffman recommended she apply for the job. (Doc. 18, Ex. 1 at 55-56.) On November 7, 2000, plaintiff applied for the job. (*See* doc. 18, Ex. 3.) Defendant had 100 applicants for the position; it interviewed 25 applicants, including plaintiff, on December 12, 2000. (Doc. 18, Ex. 6 at 4.) All applicants were examined based on the same criteria: high school diploma or equivalent, computer skills, experience working with money, and willingness to work nights and weekends. (Doc. 18, Ex. 7 at 80-83; *id.*, Ex. 9 at 28-30; *id.*, Ex. 17 at 19-20.) Further, all applicants were asked the same questions in their interviews and were interviewed by the same four interviewers: Huffman, Fewell, Shockley and Sue Collie, the Court Clerk. (Doc. 18, Ex. 7 at 82; *id.*, Ex. 9 at 30-31; *id.*, Ex. 6 at 4.)

9

After plaintiff interviewed for the job, she was told by Huffman that she did not receive the job and that the applicant defendant selected had more relevant experience. (Doc. 18, Ex. 1 at 98-99.)  The interview team unanimously selected Kevin Neel, a white male, who had worked in the Public Defender's Office in Tuscaloosa County as a work study student, had clerical skills, was knowledgeable about office and court procedures such as tickets and bail for defendants, interviewed well, and had good communication skills. (Doc. 18, Ex. 7 at 88; *id.*, Ex. 9 at 35-36, 45-46; *id.*, Ex. 10 at 69, 79-80; *id.*, Ex. 17 at 40.)

However, Neel failed to assume his duties after he accepted the position; therefore, the interview team offered the job to their second choice, Jessica Smith, a white female. (Doc. 18, Ex. 7 at 99; *id.*, Ex. 9 at 39.)  The interview team chose Smith as their second choice because of her maturity, general office and clerical skills, a good interview, and experience handling money. (Doc. 18, Ex. 7 at 103, 107, 112, 118,120; *id.*, Ex. 10 at 69-71, 79-80.)[4]

On June 18, 2001, plaintiff submitted an application for a second available full-time Court Clerk I position.  (Doc. 18, Ex. 4.)  She was again selected for an interview by the selection committee, which included Fewell, Shockley, and Huffman. (Doc. 18, Ex. 1 at 107;

---

[4]Fewell testified:

> I felt that Jessica [Smith] still had an edge over [plaintiff] because [plaintiff] did not do the duties that she was applying for should be doing.  The only thing [plaintiff] did, as far as I know, was pull a ticket out of a file.  That's all that I know that she did with me, which wouldn't be doing as, you know, a full-time employee.

*Id.* at 81.

10

*id.*, Ex. 7 at 132.)  After interviews were completed, Scott Whisenant was unanimously selected for the position by the interview team, and the interview team's selection was approved by Charles Rodenhauser, the Presiding Judge of the municipal court. (Doc. 18, Ex. 6 ¶ 1; *id.*, Ex.7 at 146-47; *id.*, Ex. 10 at 99.)  Whisenant was chosen based upon his interview, his knowledge of the Bail Bond Reform Act, his work experience in the bond area and handling cash, his familiarity with the clerk's office, and his background and reputation. (Doc. 18, Ex. 6 ¶ 1; *id.*, Ex. 7 at 133-34, 136-37; *id.*, Ex. 9 at 86-88; *id.*, Ex. 10 at 99, 101.) The interview team had reservations and concerns "pertaining to plaintiff's general reputation in the community; her ability to perform the position of full-time clerk (based upon problems with her performance as a part-time clerk, a position held by plaintiff since October 9, 2000); and her failure to to [sic] submit to fingerprinting despite repeated requests." (Doc. 18, Ex. 6 ¶ 1; *see also id.*, Ex. 10 at 67-69, 81; *id.*, Ex. 7 at 59-60, 65, 110, 124-25, 134, 138-43.)

On July 25, 2001, plaintiff filed Charge of Discrimination with the EEOC. (Doc. 18, Ex. 20.)  In her Charge, plaintiff stated:

> I was employed by the employer during October 2000.  I currently hold the title of Court Clerk I, part-time.  I've applied for and was interviewed for a full-time Court Clerk's position on several occasions.  I was denied the position on or about February 5, 2001, and again on July 17, 2001.

> I was informed on each occasion, by Sherri Huffman and Pam Fewell, that I was denied the position because I was not the most qualified candidate.

> I believe I was discriminated against in violation of Title VII of the 1964 Civil Rights Act as amended, because of my race, Black.  I contend that I was more qualified for the positions than the White candidates selected.  I met the selection criteria and was currently performing the duties of the position.  The employer, however, sought and selected less qualified candidates  for the

11

position from outside the agency. The employer violated its policy in seeking
candidates [from] outside when they had a qualified candidate. I believe the
reasons given for the actions taken against me [were] pretext for unlawful
discrimination.

(Doc. 18, Ex. 20.) The EEOC issued plaintiff a Right-to-Sue letter on September 10, 2001,

and plaintiff filed the instant action on December 7, 2001.

Section 13 of defendant's Policies and Procedures Manual contains a progressive

discipline procedure, ranging from an oral reprimand to termination. (Doc. 18, Ex. 5 at

1614-15.) Section 13.2 provides, "When work habits, attitude, productivity or personal

conduct of an employee falls below a desirable standard, supervisors should point out the

deficiency . . . but nothing in this section shall prevent formal action whenever the best

interest of [defendant] requires it." (*Id.* at 1614.) Section 13.4 also provides "An employee

may be suspended, demoted, or terminated for cause by the appointing authority." (*Id.* at

1615.) Section 13.5 lists examples of causes for disciplinary action, including convictions

for felonies, crimes involving moral turpitude, and misdemeanors reflecting unfavorably

upon the employee's character or effectiveness in the job. (*Id.*)

Also, the Personnel Policies and Procedures Manual, Section 4.4, provides an

applicant "may be rejected and/or refused further consideration, examination, or

appointment" if: (i) the applicant fails to submit an employment application according to

established procedures; (ii) the applicant tenders a false statement in connection with her

application for employment; or (iii) the applicant has been convicted of a crime or has a

record of convictions, the nature of which would affect her suitability for employment in the

12

particular position. (Doc. 18, Ex. 5 at 1571.)  Judge Rodenhauser testified, "Anybody with any criminal record we don't hire," and he testified that he could not recall any exception to this rule during his tenure.  (Doc. 18, Ex. 18 at 25-26.)

Defendant's application for hiring and/or promotion states as follows:

### PLEASE READ CAREFULLY
### APPLICANTS CERTIFICATION AND AGREEMENT

I hereby certify that the facts set forth in the above employment application are true and complete to the best of my knowledge. I understand that if employed, falsified statements on this application shall be considered sufficient cause for dismissal.  You are hereby authorized to make any investigation of my personal history and financial and credit record through any investigative or credit agencies or bureaus of your choice.

(Doc. 18, Exs. 2, 3, 4.) This language appears immediately above plaintiff's signature on her initial application, (doc. 18, Ex. 2), and the two applications for promotions, (*id.*, Exs. 3 and 4).  The application asks the applicant, "Have you ever been convicted of a crime or any other offense other than traffic citations, or do you have any charges currently pending against you?" (*Id.*, Exs. 2-4.)  On all three of her applications plaintiff responded, "No." (*Id.*, Exs. 2-4.)

Plaintiff has been charged with a crime on two separate occasions. (*See* doc. 18, Ex. 1 at 18.)  In 1985, the Huntsville Police Department arrested plaintiff and charged her with the crime of making harassing communications.  (*Id.*)  She testified:

First charge was with my children's father. We had just separated. He picked my son up from the baby sitter without my knowledge or my permission. When I called him to find out when he was going to bring him home, he would hang the phone up on me constantly.  He wouldn't answer my questions so I

13

kept calling him back.  And they had me – him and his sister had me arrested for harassing communications.

(*Id.*)  According to her rap sheet, she was convicted of the charge on November 6, 1985. (*Id.*; doc. 21, ex. 15 at 224.)  Plaintiff testified that she had "pleaded guilty under the advice of [her] attorney." (Doc. 18, Ex. 1 at 18.)  Plaintiff also testified that her attorney advised her that she "would be given juvenile status and [her conviction] wouldn't be on [her] record." (*Id.* at 22.)  Therefore, she testified that she believed she was not required to report the conviction because of her juvenile offender status and she had forgotten about the conviction. (Doc. 21 at 52.)

In addition to her 1985 conviction, plaintiff was charged with assault in the third degree and a warrant was issued for her arrest on April 29, 1996. (Doc. 21, Ex. 5.)  Plaintiff testified this was a "bogus charge." (Doc. 18, Ex. 1 at 19.)  She said, "At the time my present husband, Timothy Watkins, we went out together, and this was a young lady that he was with and she got upset because he was always coming to the house.  One day she just went down and made false allegations against me."  (*Id.*)  Shortly after plaintiff began working for defendant, Huffman told plaintiff about the outstanding warrant, and plaintiff turned herself in. (*Id.* at 53-54; doc. 21, Ex. 5.)  The complaining witness did not appear; therefore, the charge was nolle prossed in February or March 2001. (Doc. 18, Ex. 1 at 53.)

In August 2001, ten months after plaintiff began working for defendant, she provided her fingerprints, which were necessary to obtain certification to operate the NCIC and ACJIC systems. (*Id.* at 115; Ex. 7 at 126, 164.)  After the fingerprints were sent to Montgomery,

14

Alabama, the ABI Identification Unit returned a report stating that plaintiff had been convicted in November 1985 of harassing communication. (Doc. 21, Ex. 15 at 201; *see also* doc. 18, Ex. 7 at 172; *id.*, Ex. 9 at 111; *id.*, Ex. 10 at 124-25). Huffman and Shockley notified Judge Rodenhauser; Judge Rodenhauser referred the matter to defendant's legal department. (Doc. 18, Ex. 7 at 172; *id.*, Ex. 9 at 111-12, 122.) After receiving verification from the legal department that plaintiff had lied on her application, defendant decided to terminate plaintiff. (*Id.*, Ex. 7 at 172-73.) Defendant terminated plaintiff on April 9, 2002, for falsifying her applications and for poor work performance. (*Id.*, Ex. 9 at 123-25.)

On May 23, 2002, plaintiff filed an Amended Complaint to include retaliation claims based on her termination. (*See* doc. 16.)

## C.   DISCUSSION

### 1. Statute of Limitations

The Supreme Court has held that a plaintiff is barred from asserting judicial claims under Title VII as to any discrete employment act that occurred more than 180 prior to the date plaintiff files her EEOC charge. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Plaintiff filed an EEOC charge on July 25, 2001, (doc.18, Ex. 20); therefore, any discrete employment act that occurred before January 26, 2001 is time-barred.

Plaintiff asserts Title VII claims based upon three discrete employment acts, two promotion decisions and a termination decision. (Doc. 16.) Of these three acts, one – the December 2000 promotion decision – occurred more than 180 days before plaintiff filed her

EEOC charge. (Doc. 18, Ex. 1 at 98-99; *id.*, Ex. 6 at 4.) Therefore, her Title VII claim based on the December 2000 promotion decision is time barred and will be dismissed.

## 2. Promotion Claims

Plaintiff alleges that she was not promoted to a full-time Court Clerk I position because of her race in violation of Title VII, Section 1981, and the Equal Protection Clause of the Fourteenth Amendment.   The legal standards for establishing intentional racial discrimination in Title VII cases through direct or circumstantial evidence also apply to Section 1981 and Equal Protection claims.  *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985).  As plaintiff has not asserted any direct evidence in this case, she must rely upon circumstantial evidence to prove her claims.  Plaintiff must establish her case under the well-established burden-shifting analysis set out in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

In this Circuit –

Under the *McDonnell Douglas* framework, to prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of [race] discrimination by showing that:  (1) she is a member of a protected class;  (2) she was qualified and applied for the promotion;  (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000).

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).  Therefore, plaintiff has the burden of proving that she was qualified for the full-time Court Clerk I position in order to establish her claims based on her non-selection for these positions.

16

Defendant contends that plaintiff is not qualified for a full-time Court Clerk I position because of her 1985 conviction. Plaintiff argues that her misrepresentation on her application of her conviction goes to her "remedy, not to the issue of whether the employee was a victim of discrimination or whether [she was] qualified." (Pl. Br. in Opp. to Mot. for Summ. J. at 6 (citing *Wallace v. Dunn Construction Company, Inc.*, 62 F.3d 374 (11th Cir. 1995).) The court finds that the issue of plaintiff's conviction is admissible to show that plaintiff cannot prove she was qualified for the full-time positions.

The issue in *Wallace v. Dunn Construction* concerned whether the after-acquired evidence rule, announced in *McKennon v. Nashville Banner Publishing Co.*,[5] applies to cases in which the after-acquired evidence concerns the employee's misrepresentations in a job application or resume, as well as cases in which the after-acquired evidence relates to employee wrongdoing during employment. *Wallace*, 62 F.3d at 379. However, the after-acquired evidence rule in *McKennon*, does not bar otherwise admissible evidence that demonstrates plaintiff was not qualified for the sought-after position in a discriminatory selection case. *Id.* at 379 and n.8; *see also Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1281 (10th Cir. 1999)("Defendants were permitted to litigate whether Plaintiff was qualified for a pharmacist position, and they were entitled to submit evidence about Plaintiff's qualifications in this regard. In short, *McKennon*'s discussion on after-acquired evidence does not apply to this case and the evidence to which Plaintiff objects was nonetheless

---

[5]513 U.S. 352 (1995).

17

admissible to show that Plaintiff's prima facie case was not supported by a preponderance of the evidence."); *Matewski v. Orkin Exterminating Co.*, No. CIV. 02-233-P-C, 2003 WL 21516577, *4 (D. Me. Jul. 01, 2003)("[T]he prohibition on after-acquired evidence addresses the evil of offering after-the-fact rationales for adverse employment actions. . . . No such problem arises in considering 'after-acquired' evidence for the purpose of assessing whether, as a threshold matter, an employee is . . . a 'qualified individual with a disability,' an issue as to which the plaintiff bears the burden of proof."); *E.E.O.C. v. Fargo Assembly Co.*, 142 F. Supp. 2d 1160, 1164 (D. N.D. 2000).[6]

---

[6]The United States District Court for North Dakota held:

> Crucial to this issue is that the evidence in *McKennon* was offered for a different purpose than that for which defendant offers the evidence here. In *McKennon*, the defendant conceded its discrimination against the plaintiff and offered the after-acquired evidence of plaintiff's wrongdoing as a legitimate reason for discharging her. 513 U.S. at 355. Here, however, defendant has not in any way conceded liability. Rather, it seeks to use the evidence to undercut the plaintiff's proof that Lammers was qualified for the job. Further, the evidence concerns not an unrelated wrongdoing, as in *McKennon*, but an aspect of Lammers' prima facie case: His ability to perform the job. In short, defendant seeks to use this evidence, presumably along with other evidence, to prevent plaintiff from shifting the burden. It is not using it to justify an otherwise discriminatory decision. To this extent, the evidence is admissible.

> The Court agrees that *McKennon*, and sound logic, prevent defendant from using after-acquired evidence as a legitimate reason for its actions *after* the burden shifts. It may not argue to the jury that it decided not to hire Lammers because of his failure at Fiskars – assuming it proves such failure – since it did not have that information when it made its decision. However, it may argue the after-acquired evidence demonstrates Lammers is not entitled to ADA protection because he is not qualified. ***Plaintiff bears the burden of proving qualifications, without reference to knowledge by the defendant, and defendant may use any otherwise admissible evidence to undercut this proof.***

*Fargo Assembly Co.*, 142 F. Supp. 2d at 1164-65 (emphasis added).

In a selection case, plaintiff – without reference to defendant's knowledge or motives – must establish that she applied for and was qualified for the position sought. *See Wilson*, 376 F.3d at 1089; *see also Pace v. Southern Railway System*, 701 F.2d 1383, 1386 n.7 (11th Cir. 1983)("[I]n discharge and demotion cases, where a plaintiff has held a position for a significant period of time, qualification for that position, sufficient to satisfy the test of a prima facie case can be inferred.  However, where the position sought has not been held previously [such as in failure to promote and failure to hire cases] there is no basis for an inference of qualifications.").

The court finds that evidence that plaintiff was convicted of a crime in 1985 is evidence that plaintiff was not qualified for the position of full-time Court Clerk I.  Plaintiff has not presented evidence to rebut defendant's evidence that her conviction disqualified her from working for defendant's Municipal Court.  Therefore, defendant's Motion for Summary Judgment as to plaintiff's promotion claims will be granted and plaintiff's promotion claims will be dismissed.[7]

---

[7]The court notes that, even if it had assumed a prima facie case, plaintiff's promotion claims would still be dismissed because she has not established that defendant's articulated reasons for preferring Neel, Smith, and Whisenant to plaintiff are unworthy of credence.  Plaintiff certainly has not established that she is conspicuously more qualified than those selected for the full-time positions.  "[T]he Eleventh Circuit Court of Appeals has repeatedly held that, where a claim of discrimination is based on relative qualifications, disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Hall v. Ala. Ass'n of Sch. Bds.*, 326 F.3d 1157, 1167-68 (11th Cir. 2003)(quoting *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001)(quoting *Deines v. Tex. Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999)))(internal quotations omitted).

### 3. Termination Claims

Plaintiff claims defendant terminated her in retaliation for filing an EEOC charge and this instant action in violation of Title VII, and 42 U.S.C. § 1981.  To establish a prima facie case of retaliation, plaintiff must establish that (1) she engaged in statutorily-protected activity, (2) she suffered a subsequent adverse employment action, and (3) there is a causal link between the two. *Gupta v. Fl. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999).

Defendant terminated plaintiff on April 9, 2002, eight months after plaintiff filed her EEOC charge and four months after she filed the instant action.  A substantial delay between the protected activity and the adverse action, in the absence of other evidence tending to show causation, may justify judgment as a matter of law for the employer. *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001)("three and one-half month temporal proximity is insufficient to create a jury issue on causation"); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)(three to four month gap is insufficient to establish a causal relationship in retaliation cases); *Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999); *Keel v. U.S. Dept. of Air Force*, 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003).  The time disparity is insufficient to show a causal link between plaintiff's protected

---

Plaintiff contends that "subjective evaluations by all white supervisors provides a ready mechanism for discrimination." (Pl. Br. in Opp. to Mot. for Summ. J. at 7.)  However, the Eleventh Circuit has held, "an employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag.  Certainly nothing in our precedent established that an employer's reliance upon legitimate, job-related subjective considerations suggests in its own right an intent to facilitate discrimination." *Wilson*, 376 F.3d at 1088 (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1186 and n.7 (11th Cir. 2001)).

activity and her termination.  Consequently, plaintiff fails to establish a prima facie case for retaliation.

Therefore, the court will granted defendant's Motion for Summary Judgment and dismiss plaintiff's retaliation claims.[8]

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An order granting defendant's Motion for Summary Judgment and denying the parties' Motions to Strike will be entered contemporaneously with this Memorandum Opinion.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 22nd day of September, 2004.

Sharon Lovelace Blackburn
**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[8]The court notes that plaintiff has not offered evidence that "attacks head-on and rebuts" each of defendant's articulated reasons for her termination – her failure to disclose her past conviction and pending charge on her applications and her poor work performance.  Therefore, even if the court had assumed a prima facie case of retaliation, plaintiff has not produced sufficient evidence to create an issue of fact as to whether defendant's articulated reasons are unworthy of credence.